United States v. Alpizar Okay, Ms. DeViti. Actually, hold on one moment while we . . . May it please the Court? Hold on one moment, Ms. DeViti. Yes, sir, absolutely. My apologies. We need to settle our courtroom down a bit. May I proceed? Yes, please. Good morning. Good morning. My name is Anna DeViti, and I am the attorney that represents Ralph Alpizar in this case. Mr. Alpizar was charged and convicted of possession of child pornography and sentenced to an unreasonable sentence of 140 . . . 1,444 months in prison, which is 120 years. I think this case or this type of case stands out because it's a case where the court needs to consider the prejudice of everything that's introduced. And that's why I want to start with the fact that I believe the court erred in allowing the government to introduce four years of uncharged conduct in their case in chief. The government did not file notice of 404B and argued that this evidence, even though it was not charged in this conspiracy, was somehow intertwined. What makes this case specific, and the court has to realize that this is not a case of a drug conspiracy or a fraud conspiracy where you have jurors that are not outraged at the onset. You have a case where the courts have to take special care in allowing in extrinsic evidence because of the prejudice that it may cause this defendant. What they did in this case is they did not charge . . . Yeah, but the problem is that there's this evidence about his use of, do we call it Aries? Aries, yes, sir. He had Aries before. They have the first seizure. They have a discussion about it, and then they come back around and he's using it again. It does seem to me that this earlier evidence is necessary to complete the story. Judge, I would agree with you that what they found during their first seizure of the computer when they first speak to Mr. Alpazar is part and parcel of the entire evidence in this case. But I do believe going outside of that scope and bringing in four years of evidence is completely prejudicial, is in no way intertwined, and is clearly extrinsic. Now you're confusing me, which is easy to do. I'm sorry. I thought that earlier evidence was on the hard drive he had at the time they seized the main evidence, I'll call it. As Judge Pryor just said, I thought it was the same software. Judge, it was. It is. Okay. All right. I'm unconfused. Right, but it's important to note that that software was also used for legitimate purposes. It is not a child porn program. I mean, Mr. Alpazar had numerous, numerous downloads of music. As a matter of fact, I would say that it was more than a 60-40 split in the fact that he had more music than child pornography. But then there's a spillover effect. They used that same 404B or that same extrinsic evidence to comprise a summary chart, and that summary chart. Hold on a minute. Before you move on to that, now I'm confused too. I thought that the four years of images that you're talking about were all on the computer or the hard drive at the time of the second seizure. Is that wrong? Yes, but see, they're not images. They are more titles of different downloads that Mr. Alpazar did. Okay, but my point is it was all on the computer at the time of the second seizure. It was. It was all on the same computer. That's their argument. But our position is that then the spillover effect, that's why they're allowed to do a voluminous summary exhibit chart to be able to say, well, now we have so much evidence because we're adding on these four years that are not included that now we can show the jury this chart of every download that we believe is child porn because, remember, a large amount of those were deleted, so they were unable to determine whether it was child pornography or not. And then they, again, prejudiced Mr. Alpazar when at closing they do a revised summary exhibit and they use colors that we objected to that were red. So basically what they're saying is we believe this, this, this, and this is child pornography and we're going to show it to you in red so that you're, again, prejudiced, and again it shows you just how bad this information is. So that's our first argument. Our second argument is I want to go to the second. If they had used blue, would it have been all right? Well, I think it would have been a lot less showy to the jury than it was just disgusting. And I think we have to start with the fact, and I said that at the beginning, I'm going to say it again, that nobody likes child pornography. The more the person sees it, the less they like it. So there was no reason on an indictment that specifically states six different dates. I mean, come on. Using red as a highlight would be a pretty normal thing to do to just help aid a jury in distinguishing certain things from others, right? But then when they add the other 3,000 of them that they found that really were not part of it, that's where the prejudice and the cumulative effect. But I'm going to go on to the reasonableness. And what I did judge was late yesterday, and I apologize because I didn't find the case until yesterday I filed a supplemental authority. It was an unpublished opinion out of the Eleventh Circuit. And I don't know if Your Honor got it. If not, I can cite it again. We got your supplemental authority. Okay, wonderful. I think that this case goes hand-in-hand with Mr. Alpazar's case. I think that the court in that case reversed and remanded because of the unreasonableness of the sentence. It's important to note that there's two different aspects. Was it procedurally unreasonable or was it substantively unreasonable? First, as to the procedural part, we are objecting that we do not believe that the evidence that was presented at the sentencing is sufficient for a pattern of activity enhancement. Basically, what happened was, and I'm sure the court is aware, they introduced a child of a prior marriage, a stepchild, who testified about behavior that Mr. Alpazar, she said, happened to her. The court made a credibility finding that she was credible, the witness. Yes, she did. And our position is that that testimony in and of itself, because it was so remote in time and it happened 20 years ago, could never fall under the pattern of activity. It's outside what the courts believe is pattern of activity. This is something that happened such a long time ago. It doesn't connect with this crime. Allowing this to enhance Mr. Alpazar's sentence the way that it did 40, 50 years, because you're talking about a five-year, I mean a five-point up, was just outrageous. In addition to that, I'm sure the court is aware that the distribution enhancement changed after our sentencing. And we believe that— Didn't the district court give Mr. Alpazar the benefit of that forthcoming amendment? He did. She did. But then what she did was, at the end, she came forward and said, well, I'm going to find, I'm going to give him a reasonable sentence, and I'm going to sentence him to 120 years in jail. Our position is that the reasonableness of that, there is no reasonableness. There's no way that even if Mr. Alpazar was one years old, he could do 120 years in jail. In and of itself, it's an unreasonable sentence. If we look at this court's decision in the case of Kimmel—Killen, it specifically says that the 3553 factors based on the president of prior cases, the 3553 factors and the Booker factors must be considered. I filed with the court numerous 3553 factors, including his military service, the fact that he had never been arrested before, the fact that he lived in this country, that he was gainfully employed, the fact that he had mental issues, the fact that he had extensive physical issues. None of that was taken into consideration when they sentenced this defendant to a de facto life sentence. With the supplemental authority that you filed today, that case was about the factor of an unwarranted sentencing disparity. Would you talk about that a little bit? Yes, absolutely, and I think it applies specifically to Mr. Alpazar also. What you have in this case is you have, as the Sentencing Commission has stated in their report that was part and parcel of my sentencing memorandum, the excessive sentencings that are given for these type of offenses and how courts often, if not a large amount of the time, lower the sentence based on these extraordinary sentences. So what you have is you have a case that the Kennel Court referred to where a defendant who had actually been involved in the actual molestation and the actual touching and the actual acts of sexual violence received a 35-year sentence as a downward departure. In this case, you have a defendant who's 60 years old. His crime did not include distribution. He didn't distribute it. He definitely did not make this. He downloaded it, and as terrible as that crime is, is it reasonable for him to be sentenced to life in prison because with no chance of ever getting out? Some of these children were as young as 3 years old? Some of these children were very young. And after he already knew he was under investigation, he continued to download this stuff? Right, and that's just like a drug dealer who sells drugs, and you arrest him, and he goes back out, and he sells them again. And that defendant does not receive a life sentence with absolutely no priors, absolutely no criminal conviction, and a lifetime of commitment to this community. Okay, Ms. DeVita, you saved five minutes. Yes, I did. Thank you, sir. Ms. Landon? May it please the court. My name is Quinn Landon, and I represent the United States. Along with me at council's table is Assistant United States Attorney Jonathan Kurbinski, who handled the trial case below in front of the district court. I would first like to address the defendant's argument that the sentence was procedural or substantively unreasonable. The defendant has put forth no valid argument to show that the district court abused its discretion in any way. I'm asking about the enhancement for the conduct with, I think it was a niece, 20 years before? Yes, the stepdaughter. Is there no requirement that the abusive conduct be linked to the pornography itself? No, Your Honor. The pattern of activity enhancement, the plain language states that the court can consider any combination of two or more instances of sexual abuse or sexual exploitation of a minor, whether or not the conduct occurred during the course of the offense, involved the same or different victims, or resulted in a conviction. Okay, so I guess the plain language doesn't answer my question. I don't know the law here, and I'm just wondering if there's anything that requires, whether it has to be during the course, whether the extreme separation between the pornography and the acts is a problem. No, Your Honor. In fact, three circuits, the 5th Circuit, the 9th Circuit, and the 6th Circuit, found no due process violations when considering conduct that is either remote from the underlying conviction or doesn't have a factual nexus to the underlying conviction. The 9th Circuit explained in United States v. Garner that Section 2G2 eliminates the need for any temporal or factual nexus between the offense of conviction and any prior act of sexual abuse or exploitation. The provision is meant to cast a wide net to draw in any conceivable history of the crime. So this would be an open question in the 11th Circuit? No, it's not an open question in the 11th Circuit  Your Honor, the court stated that any type of conduct, even if it's 20 years prior to the underlying conviction, still can be considered when imposing a penalty. I think we said at page 573 that it need not be temporally close to the offense of conviction. Yes. So therefore, there is no issue, due process or otherwise, when it comes to considering conduct that is either not factually connected or is remote from the conviction itself. And also, the district court below did not err in making the factual finding that the stepdaughter was sexually abused by the defendant. I believe that the district court found the stepdaughter to be extraordinarily credible. The stepdaughter testified that the defendant molested her a handful of times. She also had forgiveness for the defendant. She talked extensively about the impact that the defendant's conduct had on her life. She had to go to therapy. She had trouble with her relationships. But she still was able to testify that she forgave the defendant and was remorseful of the fact that he hadn't turned his life around. The district court credited that testimony and found that the defendant did indeed molest the stepdaughter. And that is why the pattern of activity enhancement was applied in this case. There also is no error for any of the other enhancements that were applied. For instance, the obstruction of justice enhancement. There was more than enough evidence in the record to show that the defendant malingered before trial. There were three medical reports that stated that the defendant intentionally faked a mental illness and made a volitional attempt to appear as if he had a mental illness in order to avoid trial. The district court also made observations of her own. The district court stated that throughout the district court proceedings, the defendant pretended as if he didn't know what a boy or girl was, pretended as if he couldn't speak English or Spanish, but then throughout certain hearings, he would respond to defense counsel, he would respond to the court. I believe that the district court said miraculously once trial began, the defendant all of a sudden was able to participate in his defense. That evidence in the record more than substantiates applying the obstruction of justice enhancement. This sentence of 1,440 months, would you agree that it's a fairly extreme outlier even for child pornography offenses? No, Your Honor. I don't think that it is an outlier. In fact, this court just recently in United States v. Perez-Gonzalez ruled that a 1,200-month sentence, which is equivalent to 100 years, was substantively and procedurally reasonable. And that case is basically directly on point with what we have here. In the Perez-Gonzalez case, like the defendant in this case, had thousands of videos and images of child pornography in his possession. He downloaded that over a two-year period of time. The videos were over five minutes long, depicted children under the age of 12 engaging in heinous acts. He disseminated over 758 of those videos and images to other users. And he was also, like Alpazar, a hands-on abuser of a nine-year-old child. And the court stated that courts must be mindful that possession of child pornography is not a victimless crime. A child somewhere was used to produce the images downloaded by the defendant. That's true. That's true in every child pornography case. Yes. Yes, it is. But in these particular cases, the defendant's behavior was particularly egregious because they were hands-on abusers and they both obstructed justice. Let's just take a look at the defendant's conduct in this case. He downloaded over 1,700 images of child pornography. Some of the videos depicted children as young as the age of three engaging in bondage. He was taken into federal custody by the FBI and then was released. Instead of stopping his behavior after he was unnoticed of what he was doing, he went back and downloaded even more child pornography. But not only did he do that, he installed all sorts of applications on his computer, such as Drive Scrubber, to wipe his hard drive clean. He also disabled his computer's ability to make shadow copies in order to hide his abhorrent behavior. He blamed it on his deceased father. Then he blamed his conduct on his deceased father, who at the time was over 80 years old. But it was evident in the record that he was the person who had the experience and the knowledge to do all of these things because he was the one with the electronics technology degree. But not only did he continue to download child pornography even after the FBI told him to stop, he also was found to be a hands-on abuser of his stepdaughter, possibly both of his stepdaughters, because there was evidence in the record that he also touched the breasts of the witness who testified's sister. And also he obstructed justice by feigning mental illness, and he never took responsibility for his actions. The district court found that the defendant was particularly unremorseful. He didn't meaningfully apologize to his stepdaughter or any of the victims. Instead, he just persisted and only brought up his own suffering. And then, as Judge Pryor stated in his brief, blamed his conduct on his father. That conduct is particularly egregious. And because the court correctly applied all of the enhancements and the guideline sentencing range, in this case was life, a sentence of 1,444 months was within the guideline range. And this court, although it doesn't presume, it expects for a sentence that's within the guideline range to be reasonable. I would also like to briefly address the defendant's argument that the downloads between December of 2010 through January 2015 was impermissible under 404B. That is not the case. This defendant was indicted for three counts of possession and three counts of receipt. The possession charges included the two hard drives that were found in the spare bedroom. She was arguing that it wasn't intertwined. I thought this wasn't treated as 404B evidence. Yes, the district court below did treat it as intrinsic evidence. The defendant disagrees with the district court's decision. It is the government's position that these downloads were inextricably intertwined or also completed the story of the crime and also arose out of the same transactions. It arose out of the same series of transactions because Alpazar possessed thousands of videos that range from December of 2010 all the way up to January 2015 on his computers. So the downloading history was necessary to explain how he amassed that child pornography collection and also because it used the same methodology, which is the Aries peer-to-peer network. It was necessary to complete the story of the crime because it was necessary to rebut the defendant's assertion that he somehow downloaded the child pornography by mistake. He tried to state or assert that one out of every eight downloads or so, when he was bulk downloading music, he happened to come across child pornography and then immediately deleted it. Well, the downloading history through Ares belied that assertion. It showed that he downloaded thousands of videos and also entered into the system around 7,000 child pornography search terms in order to seek out and get the pornography that he desired to view. Lastly, the defendant argued that the summary exhibit was somehow prejudicial to the defendant. The standard for admitting summary exhibits is that the content has to be voluminous and it cannot be conveniently examined in court. And there's no way that the defendant could rationally argue that the jury could have viewed over 1,000 videos and images in court in any reasonable way. And also, the fact that the colors were red, green, or yellow, it just has no bearing on this case. Not only did the agent who put together the summary exhibit explain that the color-coding system was based on nothing but his own opinion, there was so much evidence in the record that any error, if this court disagrees with the district court's decision, would have been harmless because there's more than sufficient evidence in the record to show that it was the defendant who actually committed this crime. And if there are no further questions, the government will rest on its brief. Thank you. Thank you, Ms. Lambden. Ms. Davidi? You have five minutes. Please, the court. Judges, I would like to concentrate now on why I believe the sentence was unreasonable. As this court is well aware, after Booker, the guidelines are advisory, which means that even if the calculation of the court was correct and Mr. Alpazar scored a life sentence, this court had to consider the 3553 factors. And it had to assure itself that his sentence was appropriate in comparison to other sentencings. And that's when the disparity comes in. What you have here is you have a 60-year-old man with absolutely no prior convictions. The government stood before you and compared this case with another case that was ruled on by the circuit where she said herself that there was 1,700 images that was distributed by that specific defendant. It's important to note that Mr. Alpazar did not distribute child pornography. Mr. Alpazar did not make child pornography. Just a second. I thought he distributed it because he had one of those file-sharing programs. Right, because it's inherent in the program. It is inherent in the program that when you are downloading something, it remains open and someone is allowed to enter into your program because it's an open base. Something that he discussed with the agents at the first visit and then when he continued to do it would certainly allow an inference that he understood what was happening, how it worked. Right, exactly. No, no, Judge Ann, he did explain. He is a distributor. Excuse me, sir? He is a distributor, right? By virtue of using ARIES complete with the knowledge of how that works. Well, then that would mean that all defendants who participate in child pornography through this type of program are distributors. I would venture to argue that a distributor is somebody who is actively providing their downloads to other people. The fact that as part of the program you're leaving it open and people can download what you have, I do not agree with the court that it's per se distribution. I don't think it's per se distribution. It's another thing altogether, though, when this kind of peer-to-peer file-sharing system, which is commonly used by possessors of child pornography, to make that pornography available to others for trading purposes and the expectation that it will then be . . . other pornography will be shared with them. You have a discussion. Knowing you're under an investigation, you have a discussion with law enforcement agents that acknowledges now you understand how this works and then you go back to doing it again. That's not your just typical case, is it? Well, Judge, studies have shown that people that download child pornography, it has been considered an illness and it's an obsession and it can be equated to drug addiction and alcohol addiction. He didn't go out. I think really when you look at his mental illness and the fact that he suffers from PTSD and the fact that he was honorably discharged when he served this country because he was a missiles analyst and he was actually held in a missile that was under the water for a certain period of time, all of these add up to what his mental state is, and I think that's why the court did not consider his 3553 factors. With that type of sentence, he would have been sentenced to the same amount had he been a mass murderer who just got released from prison and now was sentenced on a child pornography case. I think that Booker tells courts you have to identify each defendant and sentence him appropriately, and in this specific case we find that it is unreasonable, especially based on this same court's decision about the disparity, about people that are active abusers, people that, and it's important that I bring up a fact. When his stepdaughter testified, she testified that this happened the most a handful of times. So, again, what we have is the court has found her testimony credible, so what we have is an individual saying this happened to me twice when she was questioned as to how many times she couldn't even tell the court whether it was five, six, seven. So you're talking about a handful of times. It already enhances this individual 30, 40, 50 years in jail on a case that the state of Florida found was not truthful and dropped the allegations. This is not something of repressed memory. This is a person, and I know that the court found her credible, but it's important to put this all in the correct context. This is not a perpetual child abuser. This is nobody that had any contact with a child in the last 20 years of his life. So based on the disparity in sentencing and based on the court's recent opinion of the 11th Circuit, I would state that Mr. Alpazar's sentence was unreasonable and we ask the court to remand it. Lastly, the last thing is if the court looks at the sentencing, Judge Lenner made it very clear that she believed that this is an appropriate sentence regardless of any decisions by this court, which again shows the fact that her sentence was punitive and it was punishment. No, no, no. That's a way of saying if I got the guideline calculation wrong, even looking at the 3553A factors, which you've been harping on this morning, she would still enter the same sentence. That's very helpful to us because it's an alternative holding, which courts can appropriately do, and it can save us a lot of time and resources because one of the frustrating things after Booker is how frequently we reverse sentences only to send them back and the district court within its discretion enters the same sentence. We end up having just a lot of litigation for no purpose. There's nothing wrong with that. Particularly, we've told district courts you can do that, right? Yes, Judge, but I believe in closing that that only shows the lack of the court's consideration of the valid 3553 factors.  Does a first-time offender who is 60 years old deserve to die in prison for downloading child pornography? Is that the appropriate sentence, and does this court find it reasonable in light of other sentences that courts have given on similar charges? Thank you, Ms. Davidi. Thank you, sir. We have your argument.